## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MINNESOTA

-------------------------------X

| | | |
|---|---|---|
| Nickels and Dimes Incorporated, | : | __ Civ. ____ (___)(___) |
| Plaintiff, | : | |
| v. | : | **COMPLAINT** |
| Double Danger LLC, Nicholas J. Walton, and Carrie J. McCabe-Johnston, | : | (JURY TRIAL DEMANDED) |
| Defendants. | : | |

-------------------------------X

Plaintiff Nickels and Dimes Incorporated ("Plaintiff"), by and through its attorneys, Barnes & Thornburg, LLP, for its Complaint against defendants Double Danger LLC, Nicholas J. Walton, and Carrie J. McCabe-Johnston (collectively "Defendants"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

### PRELIMINARY STATEMENT

1.      This is an action for infringement of Plaintiff's federally-registered service mark TILT® under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for cybersquatting under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d), for substantial and related claims of common law trademark infringement and deceptive trade practices under the statutory and common law of the State of Minnesota, all arising from the Defendants' unauthorized use of the marks TILT PINBALL BAR and TLT PINBALL BAR in connection with the provision, marketing, advertising, and promotion of Defendants' pinball arcade services and the unlawful registration and use of the <tiltpinballbar.com> and <tltpinballbar.com> domain names that are confusingly similar to Plaintiff's TILT® service mark, .

2.      Plaintiff and Defendant Double Danger LLC entered into a settlement agreement effective May 26, 2021 that was ratified on August 31, 2022 ("the Settlement Agreement") that by its terms was to resolve Plaintiff's claims for infringement, unfair competition, false designation of origin, cybersquatting, and deceptive trade practices. This is also an action for breach of the Settlement Agreement.

3.      Plaintiff seeks injunctive and monetary relief.

## JURISDICTION

4.      This court has jurisdiction over this action pursuant to the Settlement Agreement 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a), and 1338(a) and (b); Paragraph 12 of the Settlement Agreement; and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

## VENUE

5.      Venue is proper in this district the Settlement Agreement under 28 U.S.C. § 1391(b)(1), in that Defendant resides in this district, and 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district; and pursuant to Paragraph 12 of the Settlement Agreement.

## PARTIES

6.      Plaintiff Nickels and Dimes Incorporated is a corporation that is incorporated in Illinois and has its principal place of business in 1844 N Preston Rd., Celina, TX 75009. Since 1972 (i.e., for more than 50 years), Plaintiff has operated a TILT® arcade.

7.      Upon information and belief, Defendant Double Danger, LLC is a limited liability company formed under the laws of Minnesota that does business at 113 E. 26th Street, Suite 110,

Minneapolis, MN 55404. Upon information and belief, since 2017, Defendant has operated a pinball arcade that serves food and drinks under the TILT PINBALL BAR and TLT PINBALL BAR service marks.

8.      Upon information and belief, Nicholas J. Walton is a Manager of Defendant. Mr. Walton is a Minnesota resident. Upon information and belief, Mr. Walton participated in the infringement of Plaintiff's TILT®, TILT STUDIO®, and TILTED 10℠ service marks.

9.      Upon information and belief, Carrie J. McCabe-Johnston is a Manager of Defendant. Ms. McCabe-Johnston is a Minnesota resident. Upon information and belief, Ms. McCabe-Johnston participated in the infringement of Plaintiff's TILT®, TILT STUDIO®, and TILTED 10℠ service marks.

## FACTS

10.      Plaintiff was founded in 1972 and its first arcade opened in the Six Flags Mall, Arlington, TX the same year. Since 1972 (i.e., for 50 years), Plaintiff has operated TILT® arcade. At its peak, Plaintiff owned and operated about 200 TILT® arcades across the United States and two in New South Wales, Australia.

11.      In 2010, Plaintiff started to diversify its amusement arcade game facility entertainment services with the introduction of TILT STUDIO®. TILT STUDIO® has a larger footprint than the TILT® arcades and includes, in addition to arcade games, other entertainment experiences such as laser tag, laser maze, bowling, mini golf, and bumper cars.

12.      Plaintiff has also expanded to a format that is larger than TILT STUDIO®, called TILTED 10℠. TILTED 10℠ includes an arcade, hyper-bowling, laser tag, bumper cars, and mini

golf. Despite opening TILT STUDIO® and TILTED 10℠, Plaintiff continued to operate the smaller TILT® arcades.

13.     Plaintiff is the owner of the following valid and subsisting United States Service Mark Registrations:

| Registration No. | Mark | Services | Incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065 |
|---|---|---|---|
| 1349997 | TILT | CL 41 - Providing amusement arcade game facility entertainment services | Yes |
| 4758443 | TILT | CL 41 - Providing amusement arcade game facility entertainment services | Yes |
| 4082468 | TILT STUDIO | CL 35 - concession stands featuring food and souvenirs. CL 41 - entertainment services in the nature of amusement arcade game facilities; entertainment services in the nature of indoor amusement complexes; entertainment in the nature of amusement park rides; entertainment services, namely, arranging and providing rides and theme park attractions for children, miniature golf | Yes |

| | | facilities, and bowling alleys.<br><br>CL 43 – Providing food at amusement parks. | |
|---|---|---|---|

Attached as <u>Exhibits 1-3</u> are true and correct copies of the registration certificates and maintenance records for Plaintiff's United States Service Mark Registration Nos. 1349997, 4758443, and 4082468.

14.     Plaintiff has used the TILT® service mark in commerce continuously since 1972 in connection with the provision, marketing, advertising, and promotion of arcades and indoor amusement complexes. Attached as <u>Exhibit 4</u> is a true and correct copy of Plaintiff's website showing Plaintiff's use of the TILT®, TILT STUDIO®, and TILTED 10℠ service marks in connection with these services.

15.     As a result of its widespread, continuous, and exclusive use of the TILT®, TILT STUDIO®, and TILTED 10℠ service marks to identify its arcades and indoor amusement complexes and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the TILT®, TILT STUDIO®, and TILTED 10℠ service marks.

16.     Plaintiff's TILT®, TILT STUDIO®, and TILTED 10℠ service marks are distinctive to both the consuming public and Plaintiff's trade.

17.     Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting the arcades and indoor amusement complexes provided under the TILT®, TILT STUDIO®, and TILTED 10℠ service marks including through Facebook, Instagram, and Twitter.

18.     Plaintiff provides its arcades and indoor amusement complexes under its TILT®, TILT STUDIO®, and TILTED 10ˢᴹ  service marks to adults, families with children, and adolescents.

A.   Defendants' Unlawful Activities

19.     Upon information and belief, Defendant operated a pinball arcade under the TILT PINBALL BAR and TLT PINBALL BAR service marks. Defendants' website located at the <tiltpinballbar.com> and <tltpinballbar.com> domain names read:

> *** [W]e set out with a simple idea:  to create a unique place for friends to enjoy a pint and a game of pinball. Ever since, we've been working hard to put together a distinct selection of expertly maintained machines, including both rare and popular titles. Then, we stocked the bar with a full list of fresh beers and cool cocktails, all the while cultivating a meaningful food menu[.] Now, after years of work, our dream is finally a reality.

20.     Without Plaintiff's authorization, and upon information and belief, beginning after Plaintiff acquired protectable exclusive rights in its TILT® and TILT STUDIO® service marks, Defendant adopted and began to use a mark that incorporated the entirety of Plaintiff's TILT® service mark, namely, TILT PINBALL BAR and subsequently TLT PINBALL BAR (collectively the "Infringing Marks") in commerce.

21.     The Infringing Marks adopted and used by Defendants are virtually identical to Plaintiff's TILT® service mark. The terms PINBALL BAR are generic for Defendants' pinball arcade services and TILT or TLT are the dominant terms in the Infringing Marks.

22.     Upon information and belief, Defendants have been engaged in the provision, advertising, and promotion of pinball arcade services using the Infringing Marks. Attached as

Exhibits 5 and 6 are true and correct copies of Defendants' website located at the <tiltpinballbar.com> and <tltpinballbar.com> domain names showing Defendants' use of the Infringing Marks.

23.     Upon information and belief, the pinball arcade services Defendant has provided, marketed, advertised, and promoted under the Infringing Marks are virtually identical to arcade and indoor amusement complex services that Plaintiff provides, markets, advertises, and promotes under its TILT®, TILT STUDIO®, and TILTED 10 service marks.

24.     Upon information and belief, Defendant has marketed, advertised, and promoted its pinball arcade services under the Infringing Marks through Facebook, Instagram, and Twitter, which are the same channels of trade used by Plaintiff.

25.     Upon information and belief, Defendant provides its pinball arcade services under the Infringing Marks to adults, families with children, and adolescents, which are the same classes of consumer targeted by Plaintiff.

26.     Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' pinball arcade services and have and are likely to deceive the relevant consuming public into believing mistakenly that Defendants' pinball arcade services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

27.     Upon information and belief, Defendants' acts are willful with the deliberate intent to trade on the goodwill of Plaintiff's TILT® and TILT STUDIO® service marks, cause confusion

and deception in the marketplace, and divert potential sales of Plaintiff's arcades and indoor entertainment complexes to the Defendant.

28.     Defendants' acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

B.   Defendants' Registration and Use of the Domain Name

29.     Upon information and belief, on or about December 22, 2016, Defendant registered the <tiltpinballbar.com> domain name with the registrar Tucows, Inc.   On March 9, 2023, Defendant registered the <tltpinballbar.com> domain name with Tucows, Inc. Upon information and belief, Defendant is currently the registrant of the <tiltpinballbar.com> domain name and <tltpinballbar.com> domain name (collectively the "Domain Names"). Attached as Exhibits 7 and 8 are true and correct copies of the WHOIS records for the Domain Names.

30.     The Domain Names are identical or confusingly similar to the TILT® and TILT STUDIO® service marks, which were distinctive when Defendant registered the Domain Names. Upon information and belief, Defendant was aware of Plaintiff's rights in the TILT® and TILT STUDIO® service marks when it selected and registered the Domain Names, and knowingly and intentionally registered the Domain Names because of their similarity to the TILT® and TILT STUDIO® service marks.

31.     Upon information and belief, Defendant has no rights in or to any trademark or name that is similar to the Domain Names and is not known by any name that is similar to the Domain Names. On May 26, 2021, Defendant expressly abandoned any and all putative rights in

and to the TILT PINBALL BAR mark, any mark incorporating the TILT PINBALL BAR mark, and any word, term, name, symbol or device (or any combination thereof) that is identical or confusingly similar to, or a colorable imitation or dilutive of, Plaintiff's TILT® or TILT STUDIO® marks. Upon information and belief, Defendant had no legitimate purpose for registering the Domain Names and did so only with bad faith intent to profit from the goodwill in Plaintiff's TILT® and TILT STUDIO® service marks and from use of the Domain Names as set out herein.

32.     Upon information and belief, Defendant has violated the Anticybersquatting Consumer Protection Act.

C.   The Settlement Agreement

33.     On May 26, 2021, Plaintiff and Defendant Double Danger LLC entered into the Settlement Agreement to resolve their dispute about Defendants' unauthorized use of the TILT PINBALL BAR service mark.

34.     Section 1 of the Settlement Agreement reads in its entirety as follows:

> Cessation of Use of the Mark. [Defendant] and its officers, directors, agents, employees and all those acting in concert or participation with any of them, shall themselves and cause all other persons or entities under their control to on or before August 31, 2022 permanently cease all use of:
>
> (a) the mark TILT PINBALL BAR or any mark incorporating the TILT PINBALL BAR mark;
>
> (b) any word, term, name, symbol, or device (or any combination thereof) that is identical or confusingly similar to, or a colorable imitation or dilutive of, Plaintiff's TILT® or TILT STUDIO® marks;
>
> (c) the <tiltpinballbar.com> domain name; or
>
> (d) any false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, or to cause mistake, or to deceive as to the

9

affiliation, connection, or association of [Defendant] with [Plaintiff], or as to the source or origin of, or sponsorship or approval by, [Plaintiff] of [Defendant]'s services, goods, or commercial activities.

35.   Section 3 of the Settlement Agreement reads in its entirety as follows:

<u>Exhaustion of Materials</u>. [Defendant] shall have until August 31, 2022 to use, distribute, display, sell, or dispose of any materials, marketing collateral, and goods that bear the TILT PINBALL BAR mark, any mark incorporating the TILT PINBALL BAR mark, or any mark that is identical or confusingly similar to, or a colorable imitation or dilutive of, [Plaintiff's] TILT® or TILT STUDIO® marks.

36.   Section 4 of the Settlement Agreement reads in its entirety as follows:

<u>Removal of Materials from the Marketplace</u>. [Defendant] shall take all necessary steps to remove from public view and access by no later than August 31, 2022 all materials, including all signs, displays, and promotional and packaging materials that use, feature, or bear:

(a) the TILT PINBALL BAR mark or any mark incorporating the TILT PINBALL BAR mark;

(b) any word, term, name, symbol or device (or any combination thereof) that is identical or confusingly similar to, or a colorable imitation or dilutive of, [Plaintiff's] TILT® or TILT STUDIO® marks; or

(c) any false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of [Defendant] with [Plaintiff, or as to the source or origin of, or sponsorship or approval by [Plaintiff] of [Defendants'] services, goods, or commercial activities.

37.   On August 30, 2022, Double Danger LLC informed Plaintiff that it would not be able meet the August 31, 2022 deadline to transition its use of TILT PINBALL BAR and requested a six-month extension to complete the transition.

38.     On August 31, 2022, Plaintiff and Double Danger LLC entered into the First Amendment to Settlement Agreement (the "Amendment") that amended Sections 1, 3, and 4 of the Settlement Agreement to substitute February 28, 2023 for the August 31, 2022 deadline. Pursuant to Section 4 of the Amendment, all of the terms in the Settlement Agreement were ratified and confirmed by the parties to the Settlement Agreement.

39.     On March 1, 2023, Double Danger LLC continued to use the TILT PINBALL BAR mark and <tiltpinballbar.com> domain name in violation of the Settlement Agreement. Attached as Exhibit 9 are true and correct copies of Double Danger LLC's website, social media accounts, and photograph of front door to its pinball arcade following February 28, 2023. Double Danger LLC did not request a second extension of the transition deadline prior to February 28, 2023.

40.     On March 7, 2023, Plaintiff sent a letter to Defendant Walton, as the Manager of Double Danger LLC, informing Double Danger LLC  of its material breach of the Settlement Agreement.

41.     Without responding to Plaintiff's March 7, 2023 letter or otherwise notifying Plaintiff, Double Danger LLC changed its website and social media accounts from TILT PINBALL BAR to TLT PINBALL BAR. Defendants created the <tltpinballbar.com> domain name and continued using the <tiltpinballbar.com> domain name to forward traffic to this new domain name. Defendants also added a banner to its website that read "[t]he bar formerly known as T*LT." See Exhibit 6.

42.     Upon information and belief, Defendant Double Danger LLC materially breached the Settlement Agreement.

**COUNT ONE (Federal Trademark Infringement against all Defendants)**

43.     Plaintiff repeats and realleges paragraphs 1 through 42 hereof, as if fully set forth herein.

44.     Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are provided, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff. Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

45.     Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the TILT® and TILT STUDIO® service marks and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

46.     Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

47.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**COUNT TWO (Federal Unfair Competition against all Defendants)**

48.     Plaintiff repeats and realleges paragraphs 1 through 47 hereof, as if fully set forth herein.

49.     Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are provided, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

50.     Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

51.     Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

52.     Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

53.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

54.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs

of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### COUNT THREE (Cybersquatting against all Defendants)

55.     Plaintiff repeats and realleges paragraphs 1 through 54 hereof, as if fully set forth herein.

56.     Plaintiff owns all rights in and to the TILT® and TILT STUDIO® service marks, which are strong, and distinctive, and were strong, and distinctive as of the dates that Defendants registered the Domain Names.

57.     Defendants registered and used the Domain Names, which are confusingly similar to Plaintiff's TILT® and TILT STUDIO® service marks.

58.     Defendants registered and used the Domain Names with an intent to profit from its confusing similarity to Plaintiff's TILT® and TILT STUDIO® service marks. Among other things, upon information and belief:

(a)     Defendants registered the Domain Name, despite knowing that Defendants had no rights in any name or mark and was not known by any name that was referenced or reflected in the Domain Names;

(b)     Defendants made no bona fide, non-infringing, commercial use or fair non-commercial use of the Domain Names; and

(c)     Defendants intended to divert to the Double Danger LLC website consumers who are seeking Plaintiff's services, by exploiting the confusing similarity of

the Domain Names and the TILT® and TILT STUDIO® service marks for Defendants' commercial gain.

59.     Defendants' conduct is directly and proximately causing substantial, immediate, and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to damage Plaintiff unless enjoined by this court. Plaintiff has no adequate remedy at law.

60.     Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other injunctive relief, cancellation of Defendants' registration of the Domain Names.

61.     Plaintiff is further entitled to recover its damages and Defendants' profits, enhanced as the court deems appropriate and equitable, in amounts to be proven at trial, pursuant to 15 U.S.C. § 1117(a). Alternatively, Plaintiff is entitled to maximum statutory damages in the amount of $100,000 for the Domain Name pursuant to 15 U.S.C. § 1117(d).

62.     Plaintiff is further entitled to recover its attorneys' fees and costs, together with prejudgment and post-judgment interest.

**COUNT FOUR (Deceptive Trade Practices, M.S.A. §§ 325D.43-325D.48
Against Defendant Double Danger LLC)**

63.     Plaintiff repeats and realleges paragraphs 1 through 62 hereof, as if fully set forth herein.

64.     Defendant Double Danger LLC's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact,

that Defendants' services are provided, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff. Defendant Double Danger LLC's conduct therefore constitutes deceptive trade practices in violation of Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43-325D.48,

65.     Upon information and belief, Defendant Double Danger LLC has committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the TILT® and TILT STUDIO® service marks and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

66.     Defendant Double Danger LLC's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

67.     Plaintiff is entitled to, among other relief, injunctive relief, its reasonable attorneys' fees, and costs of the action under Minn. Stat. § 325D.45.

**COUNT FIVE (Common Law Trademark Infringement against Double Danger LLC)**

68.     Plaintiff repeats and re-alleges paragraphs 1 through 67 hereof, as if fully set forth herein.

69.     Defendant Double Danger LLC's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are provided, authorized, endorsed, or sponsored by Plaintiff, or that

Defendant is in some way affiliated with or sponsored by Plaintiff. Defendant Double Danger LLC's conduct therefore constitutes common law trademark infringement.

70.     Upon information and belief, Defendant Double Danger LLC has committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the TILT® and TILT STUDIO® service marks and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

71.     Defendant Double Danger LLC's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

72.     Plaintiff is entitled to, among other relief, injunctive relief.

**COUNT SIX (Breach of Contract against Defendant Double Danger LLC)**

73.     Plaintiff repeats and realleges paragraphs 1 through 72 hereof, as if fully set forth herein.

74.     Plaintiff and Defendant Double Danger LLC entered into a Settlement Agreement on May 26, 2021 that obligated Defendant Double Danger LLC by August 31, 2022 to cease all use of the TILT PINBALL BAR mark; any mark incorporating the TILT PINBALL BAR mark; any word, term, name, symbol, or device (or any combination thereof) that is identical or confusingly similar to, or a colorable imitation or dilutive of, Plaintiff's TILT® or TILT STUDIO® marks; the <tiltpinballbar.com> domain name; and any false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of

[Defendant] with [Plaintiff], or as to the source or origin of, or sponsorship or approval by, [Plaintiff] of [Defendant]'s services, goods, or commercial activities.

75.     On August 31, 2022, Plaintiff and Defendant Double Danger LLC ratified and confirmed Defendant Double Danger LLC's obligations and extended the compliance deadline to February 28, 2023.

76.     On March 1, 2023, Defendant Double Danger LLC was using the TILT PINBALL BAR mark and <tiltpinballbar.com> domain name in violation of its contractual obligations to Plaintiff.

77.     On or about March 14, 2023, Defendant Double Danger LLC adopted and began using the TLT PINBALL BAR mark and <tltpinballbar.com> domain name also in violation of its contractual obligations to Plaintiff. Defendant Double Danger LLC continued to use the <tiltpinballbar.com> domain name in material breach of its agreement with Plaintiff.

78.     Defendant Double Danger LLC's conduct is causing immediate and irreparable harm and injury to Plaintiff, and Plaintiff has no adequate remedy at law.

79.     Plaintiff is entitled to, among other relief, specific performance pursuant to Section 14 of the Settlement Agreement, and an award of Defendant Double Danger LLC's profits beginning on March 1, 2023 and continuing until the conclusion of this proceeding, and reasonable attorneys' fees and costs pursuant to Section 15 of the Settlement Agreement, together with prejudgment and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1.      That Defendants have violated Section 32 of the Lanham Act (15 U.S.C. § 1114); Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a); and Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d).

2.      That Defendant Double Danger LLC has violated Minn. Stat. § 325D.43 *et. seq.*, infringed Plaintiff's common law trademark rights, and materially breached the Settlement Agreement.

3.      Granting an injunction permanently enjoining the Defendants, their respective employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

a.      providing, selling, marketing, advertising, promoting, or authorizing any third party to provide, sell, market, advertise, or promote pinball arcade services or any goods or services related to pinball arcade services bearing the mark TILT PINBALL BAR or TLT PINBALL BAR or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's TILT®, TILT STUDIO®, and TILTED 10℠ service marks;

b.      engaging in any activity that infringes Plaintiff's rights in its TILT®, TILT STUDIO®, and TILTED 10℠ service marks;

c.      engaging in any activity constituting unfair competition with Plaintiff;

d.      making or displaying any statement, representation, or depiction that is likely to lead

the public or the trade to believe that (i) Defendants' services are in any manner approved,

endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or

otherwise connected with Plaintiff, or (ii) Plaintiff's services are in any manner approved,

endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or

otherwise connected with Defendant;

e.      using or authorizing any third party to use in connection with any business, goods,

or services any false description, false representation, or false designation of origin, or

any marks, names, words, symbols, devices, or trade dress that falsely associate such

business, goods and/or services with Plaintiff or tend to do so;

f.      registering or applying to register any trademark, service mark, domain name, trade

name, or other source identifier or symbol of origin consisting of or incorporating the mark

TILT or TLT or any other mark that infringes or is likely to be confused with Plaintiff's

TILT®, TILT STUDIO®, and TILTED 10℠ service marks, or any goods or services of

Plaintiff, or Plaintiff as their source; and

g.      aiding, assisting, or abetting any other individual or entity in doing any act prohibited

by sub-paragraphs (a) through (h).

4.      Granting such other and further relief as the Court may deem proper to prevent the

public and trade from deriving the false impression that any goods or services manufactured, sold,

distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by

Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by,

or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with

Plaintiff's services.

5.     Directing Defendants to immediately cease all display, distribution, marketing, advertising, promotion, sale, offer for sale, and/or use of any and all packaging, labels, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating TILT, TLT or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's TILT®, TILT STUDIO®, and TILTED 10℠ service marks, and to direct all other individuals and establishments wherever located in the United States that advertise, promote, sell, or offer for sale Defendants' services to cease forthwith the display, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing TILT, TLT, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiff's TILT®, TILT STUDIO®, and TILTED 10℠ service marks, and to immediately remove them from public access and view.

6.     Directing that Defendants recall and deliver up for destruction all goods, shopping bags, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing TILT, TLT, or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's TILT®, TILT STUDIO®, and TILTED 10℠ service marks,

7.     Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendants to file with the court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith.

8.      Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

9.      Awarding Plaintiff damages for Defendant Double Danger LLC's material breach of the Settlement Agreement in an amount to be determined at trial, but in no event less than the profits earned by Defendant Double Danger LLC beginning on March 1, 2023 and Plaintiff's costs and attorneys' fees.

10.     Directing that Defendants account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

11.      Awarding Plaintiff, upon Plaintiff's election, maximum statutory damages in the amount of $100,0000 per Domain Name found to be in violation of Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d)), in accordance with Section 35(d) of the Lanham Act (15 U.S.C. § 1117(d)).

12.     Awarding Plaintiff punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

13.      Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

14.     Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

15.     Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted,

BARNES & THORNBURG, LLP

Date: April 3, 2023

s/Bradley J. Walz
Bradley J. Walz, 339891
Bruce H. Little, 17421X
2800 Capella Tower
225 South Sixth Street
Minneapolis, MN 55402
Tel:  (612) 367-8756
Email:  bwalz@btlaw.com
        bruce.little@btlaw.com

*Attorneys for Plaintiff Nickels and Dimes Incorporated*